UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE<br><br>DAVID HLYWIAK, as owner of Vessel M/V 50/50 for Exoneration from or Limitation of Liability.<br>-------------------------------<br>J.J.C. BOATS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>MARC HLYWIAK, DAVID HLYWIAK, and JOHN DOES 1-10,<br><br>        Defendants.<br>-------------------------------<br>INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,<br><br>        Intervening Plaintiff. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 06-2504 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
By: Stephen W. Barry, Esq.
2700 Pacific Avenue
Wildwood, NJ 08260
    Counsel for Plaintiff

CASEY & BARNETT LLP
By: Gregory G. Barnett, Esq.
317 Madison Avenue, 21st Floor
New York, NY 10017
    Counsel for Intervening Plaintiff

RUBIN FIORELLA & FRIEDMAN, LLP
By: James E. Mercante, Esq.
   Michael E. Stern, Esq.
292 Madison Avenue
New York, NY 10017
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Presently before the Court is Plaintiff J.J.C. Boats' Motion for Reconsideration of the Court's prior Opinion and Order filed June 30, 2008. *See In re Hlywiak*, --- F. Supp. 2d ----, 2008 WL 2573711 (D.N.J. 2008) (hereinafter "the prior Opinion"). For the reasons set forth below, the Court will grant the Motion.

**I.**

The facts relevant to this Motion for Reconsideration are the same as those recounted in the prior Opinion, though the Court will reiterate two points. First, J.J.C. Boats does not dispute that it surrendered title to its vessel, the Twilight, to its insurance company, Indemnity Insurance Company of North America ("INA"), in exchange for the entire $200,000 value of the hull insurance policy. Second, the record before the Court on the Motion for Summary Judgment filed by Defendants Marc and David Hlywiak (the "Hlywiaks") did not conclusively establish the fair market value of the Twilight immediately before the casualty.[1] But, for purposes of this Motion, the Court will assume that J.J.C. Boats could prove a fair market value greater

---

[1] J.J.C. Boats filed a supplemental certification in further support of its Motion for Reconsideration. As part of that filing, an appraisal and report from a marine surveyor was attached to an affidavit of James Cicchitti, president of J.J.C. Boats, that stated that the fair market value of the Twilight just prior to the collision was $275,000. J.J.C. Boats failed to submit this report to the Court on the original Motion for Summary Judgment.

2

than the $200,000 value of the hull insurance policy.[2]

## II.

A motion for reconsideration may only be granted on the ground that (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) vacating the Order is necessary to correct a clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). "Reconsideration is an extraordinary remedy, and a court should grant it very sparingly. Mere disagreement with a court's decision should be raised through the appellate process and is inappropriate on a motion for reargument." *Joyce v. Sea Isle City*, 04-5345, 2008 WL 2875456, at *2 (D.N.J. July 23, 2008) (citations and internal quotation marks omitted).

## III.

After considering numerous submissions by the parties, thoroughly researching the nuanced interaction between maritime and insurance law, and considering cases cited by J.J.C. Boats'

---

[2] This assumption is important because, unless that were true, J.J.C. Boats would have no argument that it might be entitled to recover additional damages from the Hlywiaks. J.J.C. Boats conceded in its opposition to the Motion for Summary Judgment that any damages it could recover from the Hlywiaks would have to be offset by the $200,000 it already received under the INA hull insurance policy.

counsel during oral argument,[3] the Court holds that it construed the term "abandonment" more broadly than intended by the case law supporting the prior Opinion.  Accordingly, J.J.C. Boats' Motion for Reconsideration will be granted to correct this error of law and to prevent the injustice of precluding J.J.C. Boats from properly pursuing a cause of action against the Hlywiaks.[4]

The Court begins again with the repair estimate of $197,272 provided by Yank Marine, Inc. on August 16, 2005, and agrees with J.J.C. Boats' argument on reconsideration that the repair estimate was not a *precise* value of the cost of repairs to the Twilight.  After J.J.C. Boats received the repair estimate in August 2005, it had several options, each of which were worthy of consideration given how close the estimate was to the $200,000 value of the hull insurance policy.  First, it could have declared a partial loss and sought to have the vessel repaired.  A second option was to declare a partial loss and seek the cash

---

[3] Counsel for J.J.C. Boats raised four cases during oral argument on August 19 that were not previously cited, despite her submission of an opposition to the original Motion for Summary Judgment, a brief in support of the Motion for Reconsideration, and a supplemental filing in further support of the latter Motion.  While the Court questions the propriety of this action, counsel for the Hlywiaks was given an opportunity to respond to these cases, which he did in a brief filed on August 25.

[4] The issue of liability has not been presented to the Court, and this opinion is not intended to imply that the Hlywiaks were at fault for the collision with the Twilight. J.J.C. Boats' ability to establish liability is an obvious prerequisite to its ability to seek additional damages from the Hlywiaks.

4

value of the repair costs, rather than waiting for Yank Marine to actually repair the Twilight. The final option, which J.J.C. Boats chose to pursue, was to declare the Twilight a constructive total loss for insurance purposes and seek the full value of the INA hull insurance policy. Upon INA's acceptance of this declaration and its payment of the $200,000 policy value, J.J.C. Boats surrendered title to the Twilight to INA. The conveyance of title enabled the insurer to salvage the damaged vessel for $29,650, thereby offsetting the amount of its subrogation claim.

    The Court erred in the prior Opinion by equating the conveyance of title, which is part and parcel of an insurer's right of subrogation when it pays the full value of an insurance policy, with the very specific meaning of the term "abandonment" as it was used in *Continental Insurance Co. v. Clayton Hardtop Skiff*, 367 F.2d 230 (3d Cir. 1966). In *Continental Insurance*, abandonment of a vessel was done "for the purpose of minimizing civil liability of both the owner and the insurer" when a boat was lost or unrecoverable after a casualty. *Id.* at 233. Specifically, the concept of abandonment was connected with 33 U.S.C. § 409, a criminal provision, which the Third Circuit noted also "permit[ted] the owner to abandon his vessel to the Secretary of War and thereby relieve himself of future liability

5

in respect to it."[5]  *Id.* n.4.  It is in this context that the Third Circuit stated that if an insurer accepts an insured's notice of "abandonment," the insurer "becomes at once liable for the whole of his insurance, and also becomes entitled to all rights which the insured possessed in the thing insured."[6]  *Id.* at 234.

Thus, while it is true that an insurer's right of subrogation might "become[] extended by abandonment to the full amount recoverable from the tort feasor, even though that may exceed the amount of insurance paid," *id.*, an insured's simple act of conveying title to an insurer does not necessarily rise to the level of abandonment and does not preclude the insured from seeking additional damages from an alleged tortfeasor.  *See The Livingstone*, 130 F. 746, 748 (2d Cir. 1904) ("The conveyance of the res [to the insurer] did not carry with it the right to proceed against the wrongdoer.  That right had previously vested in the ship owners and, in the absence of express words of

---

[5] Though not relevant to this case, it does not appear that an owner of a sunken vessel can still absolve himself from any future civil liability by abandoning the vessel to the U.S. Government under § 409.  *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 206-09 (1967).

[6] The Court notes that this statement was in fact dictum because the insurer in *Continental Insurance* specifically advised the insured that it "reject[ed] and disclaim[ed] any ownership or interest in the vessel either in part or in whole."  *Continental Ins.*, 367 F.2d at 232.

transfer, remained so vested.");[7] *The St. Johns*, 101 F. 469, 472 (S.D.N.Y. 1900) ("The right of subrogation, though often treated as merely one of the consequences of an abandonment to insurers, is in reality in some important respects essentially different."); 2 Thomas J. Schoenbaum, Admiralty and Maritime Law 356 (4th ed. 2004) ("The assured need not give notice of abandonment even if the property qualifies as a constructive total loss." (citing *The St. Johns*, 101 F. 469)).

Accordingly, the Court holds that based on the present record there is no evidence that J.J.C. Boats abandoned the Twilight to INA. It did convey title in exchange for the $200,000 value of the hull insurance policy, but that conveyance was a product of INA's subsequent right of subrogation and not a result of J.J.C. Boats' conscience decision to abandon its right to pursue additional damages from the Hlywiaks, the alleged wrongdoers. Thus, J.J.C. Boats is legally entitled to proceed with its claim against the Hlywiaks. Moreover, genuine issues of material fact remain as to what were the fair market value of the Twilight immediately prior to the casualty and the precise cost

---

[7] Confusion may arise in considering *The Livingstone* because the Second Circuit used the term "abandonment" to describe the insured's act of conveying title to the insurer in exchange for payment of the full value of the insurance policy. However, this simply illustrates the need for greater precision when distinguishing an abandonment for maritime purposes, as discussed in *Continental Insurance*, and an abandonment, in the colloquial sense, of title for insurance purposes.

7

of repairs to the Twilight after the collision with the Hlywiaks' vessel. Without this information, the Court cannot properly determine the extent of additional damages J.J.C. Boats might be entitled to recover from the Hlwiaks if it can establish liability. *Compare The Umbria*, 166 U.S. 404, 422 (1897) ("In cases of a partial loss there is no injustice in allowing the probable profits of a charter for the short time during which the vessel is laid up for repairs . . . ."), *with Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 491 (5th Cir. 1986) ("A vessel is considered a constructive total loss when the cost of repairs is greater than the fair market value of the vessel immediately before the casualty. Damages for loss of use may not be awarded when the vessel is a constructive total loss." (citations omitted)).

## IV.

For the reasons stated above, J.J.C. Boats' Motion for Reconsideration will be granted and the Hlywiaks' Motion for Summary Judgment will be denied. The Court will issue an appropriate order.

Dated: August 27, 2008

s/ Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.

8