```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| IN RE<br><br>DAVID HLYWIAK, as owner of<br>Vessel M/V 50/50 for Exoneration<br>from or Limitation of Liability.<br>-------------------------------<br>J.J.C. BOATS, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>MARC HLYWIAK, DAVID HLYWIAK, and<br>JOHN DOES 1-10,<br><br>         Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 06-2504<br>       (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
By:  Stephen W. Barry, Esq.
     Christine M. Cote, Esq.
2700 Pacific Avenue
Wildwood, NJ 08260
     Counsel for Plaintiff

RUBIN FIORELLA & FRIEDMAN, LLP
By:  James E. Mercante, Esq.
     Michael E. Stern, Esq.
292 Madison Avenue
New York, NY 10017
     Counsel for Defendants

**IRENAS**, Senior District Judge:

   This is an admiralty action concerning a collision between two vessels - the Twilight and the 50/50, which occurred on July 1, 2005.  Plaintiff J.J.C. Boats is the owner of the Twilight. The issues for trial are (1) liability for the collision and (2) the extent of damages sustained by Plaintiff.  Presently before

the Court is Defendants' Motion in Limine, seeking to preclude Plaintiff from offering evidence of any damages other than those attributable to the fair market value of the Twilight prior to the casualty.

For the reasons that follow, the Motion will be granted in part and denied in part. Plaintiff's potential damages will be limited to the fair market value of the Twilight prior to the casualty plus prejudgment interest, along with compensation for the refunded proceeds of the voyage the Twilight was performing at the time of the collision with the 50/50.

**I.**

Plaintiff proposes to introduce testimony about two types of damages. First, Plaintiff intends to prove that it is entitled to recover the fair market value of the Twilight, to the extent it exceeds $200,000, along with prejudgment interest.[1] Second, Plaintiff intends to demonstrate it is entitled to $29,132.33 in "additional damages."

Defendants contend that none of the "additional damages" sought by Plaintiff are recoverable pursuant to long-standing maritime law. According to Plaintiff, the $29,132.33 in

---

[1] $200,000 is the amount of the payment Plaintiff previously received from its insurance carrier in compensation for the constructive total loss of the Twilight.

additional damages[2] is comprised of:

    (1) **Annual Fees** paid to the United States Coast Guard and the Borough of Wildwood Crest in 2005.

    (2) **Mortgage Interest** paid to Boardwalk Bank on the Twilight for the period of July, 2005, through December, 2005.

    (3) **Advertising** purchased by Plaintiff for the 2005 season, including **Printing Costs** and **Distribution Costs**.

    (4) **Annual Maintenance** and **Equipment Purchases** to ready the Twilight for the 2005 season.

    (5) **Refund to Passengers** on board the Twilight on the day of the collision with the 50/50 ($840).

    (6) **Seasonal Dock Rental** for the months the Twilight was unable to use the dock following the collision.

As explained further below, the applicable law of damages varies based on whether the case is one involving a total loss or a partial loss. A constructive total loss case is one that involves a vessel "whose damage is repairable but the cost of repairs exceeds the pre-collision value." 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* 115 (4th ed. 2004).[3] A partial loss case is one in which "the pre-collision value of the vessel is

---

[2] All information that follows pertaining to additional damages is gleaned from the Question and Answer submitted by Plaintiff as to the proposed testimony of James Cicchitti, President of J.J.C. Boats, and the exhibits thereto. Plaintiff does not provide a summary sheet detailing the line items constituting the $29,132.33 sum. However, the Court does not think it is necessary to reconcile this figure for the purposes of the current motion.

[3] The same law of damages applies regardless of whether the total loss is actual or constructive. *Galapagos Corp. Turistica v. The Panama Canal Comm'n*, 190 F.2d 900, 902 n.1 (E.D. La. 2002); Schoenbaum, *supra*, at 115. An example of an actual total loss would be a situation in which a vessel sinks to the bottom of the ocean. *In re Lebeouf Bros. Towing Co., Inc.*, 588 F.Supp. 130, 131 (E.D. La. 1984).

greater than the reasonable cost of repairs[.]"  *In re Lebeouf Bros. Towing Co., Inc.*, 588 F.Supp. 130, 131 (E.D. La. 1984).

In this case, the estimated repairs on the Twilight would have been $197,272; the insurance coverage on the vessel was $200,000.  *In re Hlywiak*, No. 06-2504, slip op. at 6-7 (D.N.J. Jun. 30, 2008) (*Hlywiak I*); *In re Hlywiak*, 573 F.Supp.2d 871, 873 (D.N.J. Aug. 27, 2008) (*Hlywiak II*).  Although the insurance coverage in this case slightly exceeded the estimated cost of repairs, this Court recognized that vessel owners are permitted to claim a constructive total loss under such circumstances.  *Hlywiak I*, slip op. at 7-8 (citing *Calmar S.S. Corp. v. Scott*, 209 F.2d 852, 854 (2d Cir. 1954)).

This aspect of the Court's decision was not altered on reconsideration.  *See Hlywiak II*, 573 F.Supp.2d at 873 ("The final option, which J.J.C. Boats chose to pursue, was to declare the Twilight a constructive total loss for insurance purposes . . . .").

## II.

### A.

In the context of a maritime collision, potential recovery for loss of use turns on whether the loss is total or partial.  Schoenbaum, *supra*, at 114.  *The Umbria* was a total loss case in which the Supreme Court considered whether vessel owners could recover damages for the probable profits of a future voyage which the vessel had contracted to perform.  166 U.S. 404, 421 (1897).

The Court determined no such recovery was permitted, citing the general rule in total loss cases that "collision damages are limited to the value of the vessel, with interest thereon, and the net freight pending at the time of the collision." *Id.*; *see also* Schoenbaum, *supra*, at 115.  In so holding, the Court expressed concern that if total loss cases permitted recovery of damages for profits of voyages not yet begun, the potential damages would be limitless.  *The Umbria*, 166 U.S. at 422.  By contrast, in partial loss cases, profits lost while a vessel is awaiting repairs are recoverable.  Schoenbaum, *supra*, at 118; *see The Umbria*, 166 U.S. at 421.

Recovery in total loss cases can include, as "net freight pending," the profits of the voyage the vessel is in the midst of performing when a total loss occurs.  *Tucker Energy Servs., Ltd. v. Hydraquip Corp.*, No. H-05-1265, 2007 WL 2409571, at *3 (S.D. Tex. Aug. 20, 2007) (citing *The Umbria*, 166 U.S. at 422).[4]

**B.**

In certain circumstances, recovery has been permitted in total loss cases for what can be described as "unavoidable"

---

[4] *See also A&S Transp. Co. Inc. v. Tug Fajardo*, 688 F.2d 1, 2 n.1 ("The profits of the same voyage on which the ship was engaged at the time of its loss have been allowed in the case of a total loss."); *cf. O'Brien Bros. v. The Helen B. Moran*, 160 F.2d 502, 506 (2d Cir. 1947) ("At most, in case of a constructive total loss, only the anticipated profits of the particular voyage upon which the [vessel] was engaged at the time of the collision could have been recovered as demurrage.").  *But see Ozanic v. United States*, 165 F.2d 738, 743 (2d Cir. 1948) (refusing to permit profits for voyage vessel was then engaged in and finding "no difference between profits under a charter already entered upon and under one not yet begun.").

5

costs.[5]  An example of such a case is *Albany Ins. Co. v. Bengal Marine, Inc.*, which involved a barge that sank while it was being towed and was ultimately declared a constructive total loss.  857 F.2d 250, 251 (5th Cir. 1988).  The district court awarded damages of $233,955.53 even though the fair market value of the barge was only $120,000.  *Id.* at 253.  Trial testimony indicated that certain expenses were necessarily incurred by cleaning the barge, because no shipyard or scrapyard would accept it, and the barge could not be left where it was without violating environmental and Coast Guard rules.  *Id.*  Testimony also indicated that temporary repairs were required otherwise the barge could not be moved.  *Id.*  The Fifth Circuit determined this testimony was plausible and did not require decreasing the damages award.  *Id.*  The Fifth Circuit also upheld damages for fleeting the barge, and for salaries and expenses incurred by Plaintiff, *id.*—all of which apparently related to the cleaning and temporary repairs of the barge.[6]  *See Tucker Energy Servs.*, 2007 WL 2409571, at *2 ("*Albany* [*Ins. Co.*] holds that necessary expenses resulting from a collision-like mandatory wreck removal-may be included in recovered damages.  It supports the conclusion that immediate necessities are not, by definition, consequential.").

---

[5] The three cases discussed in this section are cited by Plaintiff in the instant case as purported authority for the proposition that it can recover the various additional losses J.J.C. Boats incurred as a result of the collision involving the Twilight and the 50/50.  (See Pl. Trial Br. 3-4)

[6] The Fifth Circuit's opinion is not entirely clear on this point.

*O'Brien Bros v. The Helen B. Moran*, 160 F.2d 502 (2d Cir. 1947), is another example of when recovery was permitted for unavoidable costs accompanying a total loss. The district court failed to determine whether the case involved a constructive total loss, which required the Second Circuit to remand. *See id.* at 505, 507. If it was determined that the case involved a constructive total loss, the Second Circuit instructed the district court to allow damages for the value of the vessel and costs of raising the vessel "inasmuch as she had to be raised in order to ascertain the extent of the damage and to remove her as an obstacle to the use of the slip in which she was sunk as a result of the collision." *Id.* at 506.

The Third Circuit has also recognized that damages may be appropriate as compensation for the costs of raising a vessel that is later determined to be beyond repair. *See Crain Bros., Inc. v. Duquesne Slag Prods. Co.*, 273 F.2d 948, 953-54 (3d Cir. 1959).

### C.

"The generally established rule is that in a case of total loss the measure of damages does not include loss of use or other consequential damages." *Albany Ins. Co.*, 857 F.2d at 253; *Galapagos Corp. Turistica v. Panama Canal*, 190 F.Supp.2d 900, 907 (E.D. La. 2002); *Tucker Energy Servs., Ltd.*, 2007 WL 2409571, at

*1; *see also* Schoenbaum, *supra*, at 115 n.2.[7]  Plaintiff acknowledges this rule.  (See Pl. Trial Br. at 3-4)  In a related proposition, courts have stated that the measure of damages in a total loss case is the value of the ship, plus interest and net freight pending.[8]  *The Umbria*, 166 U.S. at 421; *see* Schoenbaum, *supra*, at 115.

Citing the rule against consequential damages, the Fifth Circuit in *Albany Insurance Co.* reversed an award of damages for the rental of a replacement vessel, when the primary vessel was a

---

[7] The Third Circuit has quoted approvingly of the following definition of consequential damages: "Consequential damages are merely compensatory damages for harm that 'does not flow directly and immediately from the act of a party, but only some of the consequences or results of such act.'" *Deisler v. McCormack Aggregates Co.*, 54 F.3d 1074, 1083 n.16 (3d Cir. 1995) (quoting Black's Law Dictionary 390 (6th ed. 1990)).
In a maritime case, a Texas district court wrote that "[i]n maritime law, consequential damages are things like loss of future profits, goodwill, business reputation, and even mental anguish and physical inconvenience." *Tucker Energy Servs., Inc.*, 2007 WL 2409571, at *2 (citing 2 S. Sorkin, *Goods in Transit*, § 11.10[1][a] at 11-89, 90 (1999)).

[8] In addition, courts have permitted recovery for certain unavoidable costs.  *See supra* pt. II, B.  The Second Circuit summarized the law as follows:

> The damages sustained by the owner of a vessel which is sunk in a collision, when the vessel is a total loss, is her value at the time of the loss, to which interest may be added to afford complete indemnity; and to this may also be added the necessary expenses of raising her, when that is necessary to determine whether she can be repaired advantageously; and when she is sunk in a place where she is liable to be an obstruction to navigation, the expenses of removing her may also be added.

*O'Brien Bros. v. The Helen B. Moran*, 160 F.2d 502, 506 (2d Cir. 1947).
Courts have simplified this proposition and stated that "where a vessel is a total loss the measure of damages is the market value at the time of the loss." *King Fisher Marine Serv, Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1185 (5th Cir. 1984); *see also Gaines Towing and Transp., Inc. v. Atlantia Tanker*, 191 F.3d 633, 635 (5th Cir. 1999) ("[T]he market value of the vessel is the ceiling of recovery."); *Ozanic v. United States*, 165 F.2d 738, 740 (2d Cir. 1948) ("The owner of a ship totally lost is entitled to recover the gross sum which could have been obtained just before the collision in a sale resulting from negotiations between a willing seller and a willing buyer who gave fair and reasonable consideration to all relevant facts.").

constructive total loss. *Albany Ins. Co.*, 857 F.2d at 253. Similarly, the First Circuit upheld a district court's denial of consequential damages for expenses incurred in procuring a substitute for a barge that was a constructive total loss. *A&S Transp. Co., Inc. v. Tug Fajardo*, 688 F.2d 1, 1-2 (1st Cir. 1982).

The most analogous case on the damages issue to the instant case is *Galapagos Corp. Turistica v. Panama Canal*, 190 F.Supp.2d 900 (E.D. La. 2002). In *Galapagos*, a vessel was docked when a fire broke out on board. *Id.* at 902. Firefighting units responded, but were unsuccessful, and the fire destroyed the ship. *Id.* The owners of the vessel sued the firefighters for negligence. *Id.* Defendants moved for partial summary judgment, arguing that loss of use and other consequential damages were not recoverable under maritime law. *Id.* at 902-03. The district court recognized the general rule that total loss cases do not permit recovery for loss of use or other consequential damages.[9] *Id.* at 907. Noting that in total loss cases "the market value of the vessel is the ceiling of recovery[,]" the district court determined that claims for "confirmed sales of tickets, publicity, merchandising, loss of image, expenses in Panama, repatriation, and liquidation of personnel" were not compensable.

---

[9] The court further supported this general rule by reference to 22 U.S.C. § 3773, a statute specifically pertaining to actions in the Panama Canal, which is where the fire in *Galapagos* occurred. *See Galapagos*, 190 F.2d at 908.

*Id.* at 908. Thus, the vessel's possible damages were limited to the fair market value of the vessel at the time of the loss. *Id.*

### III.

In the instant case, Plaintiff can recover the $840 refunded to passengers aboard the Twilight at the time of the collision with the 50/50; that sum is compensable as "net freight pending." *See The Umbria*, 166 U.S. at 421.

The remainder of the "additional damages" sought by Plaintiff — such as annual licenses, docking fees, maintenance, and publicity — are not recoverable in this action. Those fall under the general rule that consequential damages are not recoverable in total loss cases.

The cases cited by Plaintiff, discussed in part II., B., *supra*, are not to the contrary. Those cases involve unavoidable costs that flow directly from a collision — such as the need to raise the vessel to determine if it is a total loss, or to move the vessel from obstructing the waterways. Indeed, these unavoidable costs have been deemed compensable even though they are not part of "the value of the vessel, with interest thereon, [or] the net freight pending." *See The Umbria*, 166 U.S. at 421. At the same time, these types of expenditures are distinguishable from the business expenses for which Plaintiff seeks compensation in the instant case.

### IV.

For the reasons stated above, Defendants' Motion will be

granted in part and denied in part.  Plaintiff's potential damages will be limited to the fair market value of the Twilight prior to the casualty plus prejudgment interest, along with $840 in refunded revenue to passengers aboard the Twilight at the time of the collision with the 50/50.  The Court will issue an appropriate Order.

Dated:  May   13th  , 2009

                                                s/ Joseph E. Irenas   
                                             **JOSEPH E. IRENAS, S.U.S.D.J.**